**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ———————————————— ) | |
| DISPLAY TECHNOLOGIES, LLC ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | C.A. No. 2:23-cv-00591 |
| ) | |
| SIRIUS XM RADIO INC., ) | **JURY TRIAL DEMANDED** |
| ) | |
| *Defendant*. ) | |
| ———————————————— ) | |

**SIRIUS XM RADIO INC.'s MEMORANDUM OF LAW IN SUPPORT OF ITS
FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS AS THE ASSERTED PATENTS
<u>CLAIM UNPATENTABLE SUBJECT MATTER UNDER 35 U.S.C. § 101</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF THE ISSUE ............................................................................... 3

III.    STATEMENT OF FACTS ....................................................................................... 4

        A.      Background Of The Patents-in-Suit ............................................................. 4

                1.      The '195 Patent .................................................................................. 4

                2.      The '723 Patent .................................................................................. 5

        B.      The Asserted Claims .................................................................................... 6

                1.      The '723 Patent .................................................................................. 6

                2.      The '195 Patent .................................................................................. 8

        C.      The Claimed Subject Matter Uses Only Routine and Conventional
                Computing Devices and Network Technologies ........................................ 10

        D.      DT Alleges Infringement by SXM's Streaming Audio Players Seeking To
                Obtain A Quick Nuisance-Value Payment ................................................. 12

IV.     LEGAL STANDARDS .......................................................................................... 13

        A.      Motions To Dismiss Under Rule 12(b)(6) ................................................. 13

        B.      This Court Routinely Dismisses Cases For Patent Ineligibility At The
                Pleading Stage ............................................................................................ 13

        C.      Claim Construction is Not Required to Conduct the Section 101 Analysis ........ 15

V.      THE PATENTS-IN-SUIT ARE PATENT-INELIGIBLE UNDER THE TWO-
        STEP *ALICE* ANALYSIS .................................................................................... 16

        A.      *Alice* Step One: The Asserted Claims Are Directed To An Abstract Idea .......... 16

                1.      The Patents-in-Suit Are Directed To The Abstract Idea Of
                        Transferring A Digital Media File ................................................... 17

                2.      The Patents-in-Suit Fail To Disclose Any New Improvement In
                        Computer Or Network Technology ................................................. 19

        B.      *Alice* Step Two: The Claims Lack An Inventive Concept To Transform
                The Abstract Idea Into Patent-Eligible Subject Matter .............................. 20

                1.      The Patents-in-Suit Describe Only Generic Computing And
                        Networking Technologies ................................................................ 21

                2.      The Result-Oriented Claim Language Cannot Make The Claims
                        Patent-Eligible ................................................................................. 22

                3.      The Dependent Claims Fail To Add Any Inventive Concept .................. 23

                4.      The Claims Are Patent-Ineligible Even When The Elements Are
                        Considered As An Ordered Combination ................................................. 25

VI.     CONCLUSION ....................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software v. Green Shades Software*,
    890 F.3d 1354 (Fed. Cir. 2018)...................................................................................21

*Affinity Labs of Texas, v. Amazon.com*,
    838 F.3d 1266 (Fed. Cir. 2016).....................................................................................2

*Affinity Labs of Texas v. DIRECTV*,
    838 F.3d 1253 (Fed. Cir. 2016)...................................................................................17

*Alice v. CLS Bank*,
    573 U.S. 208 (2014).......................................................................................... *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................13

*Ass'n for Molecular Pathology v. Myriad Genetics*,
    569 U.S. 576 (2013)...................................................................................................14

*Bascom Glob. Internet Servs. v. AT&T Mobility*,
    827 F.3d 1341 (Fed. Cir. 2016).............................................................................25, 26

*Berkheimer v. HP*,
    881 F.3d 1360 (Fed. Cir. 2018)...................................................................................15

*Bridge and Post v. Verizon Commn's*,
    778 F. App'x 882 (Fed. Cir. 2019) ..............................................................................16

*BSG Tech v. Buyseasons*,
    899 F.3d 1281 (Fed. Cir. 2018)...........................................................................22, 23, 24

*Cave Consulting Grp. v. Health Care Serv.*,
    2017 WL 8809636, at *9 (E.D. Tex. Dec. 22, 2017)............................................................15

*ChargePoint v. SemaConnect*,
    920 F.3d 759 (Fed. Cir. 2019).....................................................................................22

*Clear with Computers v. Dick's Sporting Goods*,
    21 F. Supp. 3d 758 (E.D. Tex. 2014) ........................................................................3, 15

*Content Extraction & Transmission v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014).................................................................................6, 8

*Cyberfone Systems v. CNN Interactive Grp.*,
   558 F. App'x 988 (Fed. Cir. 2014) ...................................................................15

*Diamond v. Diehr*,
   450 U.S. 175 (1981)........................................................................................17

*Display Technologies v. Canon USA*,
   Case No. 2-17-cv-00192 (E.D. Tex.), Dkt. Nos. 18 ...........................................13

*Elec. Power Grp. v. Alstom*,
   830 F.3d 1350 (Fed. Cir. 2016)........................................................................21

*Enfish v. Microsoft*,
   822 F.3d 1327 (Fed. Cir. 2016)........................................................................18

*Free Stream Media v. Alphonso*,
   996 F.3d 1355 (Fed. Cir. 2021)...........................................................17, 18, 19, 20

*Genetic Techs. Ltd. v. Merial*,
   818 F.3d 1369 (Fed. Cir. 2016)........................................................................14

*Intell. Ventures II v. Sprint Spectrum*,
   No. 2:17-CV-00661-JRG, 2018 WL 6804804 (E.D. Tex. Sept. 24, 2018) .........13

*Internet Patents v. Active Network*,
   790 F.3d 1343 (Fed. Cir. 2015)...................................................................14, 16

*Interval Licensing v. AOL*,
   896 F.3d 1335 (Fed. Cir. 2018)...........................................................16, 20, 23

*Mayo Collaborative Servs. v. Prometheus Labs.*,
   566 U.S. 66 (2012)....................................................................................14, 20

*McRO v. Bandai Namco Games Am.*,
   837 F.3d 1299 (Fed. Cir. 2016)........................................................................17

*NexusCard v. Kroger*,
   Case No. 2:15-cv-968-JRG-RSP, 173 F. Supp. 3d 462 (E.D. Tex. 2016)............15

*RecogniCorp v. Nintendo*,
   855 F.3d 1322 (Fed. Cir. 2017)........................................................................21

*Repifi Vendor Logistics v. IntelliCentrics*,
   No. 4:20-CV-448-SDJ, 2021 WL 1196271 (E.D. Tex. Mar. 30, 2021) .............3, 15

*SAP Am. v. InvestPic*,
   898 F.3d 1161 (Fed. Cir. 2018)........................................................................14

*Semantic Search Techs. v. Aldo U.S.*,
    425 F. Supp. 3d 758 (E.D. Tex. 2019) ....................................................................18

*Simio v. FlexSim Software Prods.*,
    983 F.3d 1353 (Fed. Cir. 2020) ..............................................................................13

*Synopsys v. Mentor Graphics*,
    839 F.3d 1138 (Fed. Cir. 2015) ..............................................................................14

*In re TLI Commn's LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ........................................................................ *passim*

*Trading Techs. Int'l v. IBG*,
    921 F.3d 1378 (Fed. Cir. 2019) ..............................................................................16

*Two-Way Media Ltd. v. Comcast Cable Commc'ns*,
    874 F.3d 1329 (Fed. Cir. 2017) .......................................................................16, 25

*Ubisoft Entm't, S.A. v. Yousician Oy*,
    814 Fed. App'x 588 (Fed. Cir. 2020) .....................................................................22

*Uniloc USA v. ADP*,
    772 F. App'x 890 (Fed. Cir. 2019) .........................................................................21

*Uniloc USA v. Amazon.com*,
    243 F. Supp. 3d 797 (E.D. Tex. 2017), *aff'd*, 733 F. App'x 1026 (Fed. Cir.
    2018) .......................................................................................................................15

*W. View Research v. Audi AG*,
    685 F. App'x 923 (Fed. Cir. 2017) .........................................................................24

**Statutes**

35 U.S.C. § 101 .......................................................................................... *passim*

**Other Authorities**

Rule 12(b)(6) ...................................................................................3, 14, 15

U.S. Patent No. 8,671,195 .......................................................................... *passim*

U.S. Patent No. 9,300,723 .......................................................................... *passim*

## I.     **INTRODUCTION**

The instant action brought by Display Technologies, LLC ("DT") is the latest example of a "nuisance-value" case among the ***nearly 100*** litigations it has filed.  As one Court has explained, DT's "goal" is to pursue a "'nuisance-value' settlement" because its "business model does not involve actual litigation." *See* Aug. 5, 2021 Order in Case No. 1:20-cv-00258-RGA (D. Del.) at 2. This is apparent from DT's habit of voluntarily dismissing litigations soon after (sometimes, mere days after) substantive motions, such as those like the instant motion, are filed.  DT's actions in this regard are indicative of the weakness of its asserted patents.  But DT has now encountered a Defendant in Sirius XM Radio Inc. ("SXM") seeking its day in Court rather than pay DT's ransom.

DT alleges that SXM infringes two patents, U.S. Patent No. 8,671,195 (the "'195 Patent") and U.S. Patent No. 9,300,723 (the "'723 Patent") (collectively, the "Patents-in-Suit"), which broadly claim methods for transferring digital media files using nothing more than routine and conventional computing and networking technologies. *See* Dkt. No. 1 ("Complaint"), ¶ 4. These patents are classic examples of patents that courts in this and other districts, as well as the Federal Circuit, routinely hold invalid under 35 U.S.C. § 101 as being directed to an abstract idea without the requisite "inventive concept" to transform the claims into patent-eligible subject matter.  The Patents-in-Suit are directed to a result—transferring a digital media file via a communication link that is structured to bypass a security measure on the receiving device—without describing ***how*** to achieve that result. *See, e.g.*, '723 Patent, Claim 1; '195 Patent, Claims 1, 17, 23.

More specifically, the Patents-in-Suit require a "communication link… structured to bypass at least one media terminal security measure." *Id.*  But, critically, the Asserted Claims do not require, and the specifications of the Patents-in-Suit do not describe, ***any specific*** software, circuitry, control logic, parameters or other technical mechanism for ***how*** to implement the claimed result of "bypassing" a "security measure." *See, e.g.*, '723 Patent, Claim 1; *id.* at 1:53-63.  Instead,

the Patents-in-Suit describe only the aspirational nature of the claims, such as that it would be "advantageous" and "beneficial" if the claimed transfer "protocol includes a communication link structured to bypass at least one or more security measures." *Id.* at 1:53-63.  The Patents-in-Suit therefore leave it entirely to the reader to fill this gap on how to implement the claimed invention. But the Federal Circuit has explained that patent claims, like the Asserted Claims, that are directed only to a "desired function or outcome" without regard to how to implement it are directed to an unpatentable "abstract idea." *Affinity Labs of Texas, v. Amazon.com*, 838 F.3d 1266, 1268-69 (Fed. Cir. 2016). Thus, they are patent-ineligible.

While claims directed to an abstract idea, such as transferring a data file between two devices, could be patent-eligible if they contain an "inventive concept" that transforms the claims into a patent-eligible application of that idea, that is not the case here. *Alice v. CLS Bank*, 573 U.S. 208, 217-18 (2014).  Here, the Patents-in-Suit fail this test because they describe and claim only generic and conventional computing and networking technologies, behaving exactly as one would expect them to within computer systems.  Even the order of the claim elements is not inventive as they do not describe any surprising result or behavior, or any improvement or unexpected feature arising from the purported inventions.

For example, the claims describe generic "media systems" and "communication protocols" in which a generic "media terminal" connects to a generic "media node" via a generic "computer network" to transfer a generic "media file." '723 Patent, Claim 1; '195 Patent, Claims 1, 17, 23. The specifications likewise confirm the generic, routine, and commonplace nature of the claims— "The present disclosure is generally related to a digital media communication protocol structured to facilitate transferring and/or transmitting one or more digital media files to and/or from a media terminal and a media node via at least one interactive computer network." '723 Patent, 1:15-20;

*see also* '195 Patent, 1:6-11.  The aspirational nature of the claimed result, combined with the generic and conventional components recited in the claims (both individually and as an ordered combination), fail the two-part test for eligibility under *Alice.* 573 U.S. at 217-18, 221-24 (finding claims that "merely require generic computer implementation… fail to transform that abstract idea into a patent-eligible invention").  At most, the Patents-in-Suit describe performing an idea on a computer rather than describing how to improve that computer's operation.

Federal courts, including courts in this District, regularly hold these kinds of broad patents invalid under Section 101 at the motion to dismiss stage. *See, e.g.*, *Repifi Vendor Logistics v. IntelliCentrics*, No. 4:20-CV-448-SDJ, 2021 WL 1196271, at *9 (E.D. Tex. Mar. 30, 2021), *aff'd*, 2022 WL 794981 (Fed. Cir. Mar. 15, 2022) (granting Rule 12(b)(6) motion to dismiss where the asserted patent is directed to an abstract idea and is invalid under 35 U.S.C. § 101).  While DT has generically indicated that claim construction may be needed to resolve this motion, this Court can review the Patents-in-Suit for subject matter eligibility now and find the Patents-in-Suit invalid as being directed to abstract ideas without the requisite inventive concept to transform the claims into patent-eligible ones.  Indeed, it is "not strictly necessary" to construe the claims to evaluate them for subject matter eligibility at this stage. *Clear with Computers v. Dick's Sporting Goods*, 21 F. Supp. 3d 758, 764 (E.D. Tex. 2014).

As explained more fully below, SXM respectfully requests that this Court dispose of this case now, pre-*Markman*, because the Patents-in-Suit are invalid, and dismiss DT's "nuisance-value" claims with prejudice.

## II.    <u>STATEMENT OF THE ISSUE</u>

Whether the claims of DT's '195 and '723 Patents are invalid under 35 U.S.C. § 101 for lack of patent-eligible subject matter because they are directed to the abstract idea of transferring

a digital file using only routine, generic, and conventional computing and networking technologies that work as expected according to their normal use and add nothing inventive?

## III.    STATEMENT OF FACTS

### A.    Background Of The Patents-in-Suit

DT alleges that SXM infringes the Patents-in-Suit based on two products identified in the Complaint. *See* Complaint, ¶ 4.  The Patents-in-Suit are summarized below.

#### 1.    The '195 Patent

The '195 Patent issued on March 11, 2014 from U.S. Patent App. No. 11/999,570, filed December 7, 2007, and is entitled "Digital Media Communication Protocol."

The '195 Patent discloses that portable devices (*e.g.*, smartphones, MP3 players, or PDA) are capable of storing digital media files (such as photo, video, or music files) in memory on the device. '195 Patent, 1:13-25. The patent states that many of those devices "include relatively small display screens" and, as a result, users "may desire to share the digital media files and/or transfer, display, or play the files on a computer or other media device . . . [with a] better quality screen, or having higher quality speakers . . . ." *Id.*, 1:26-36.

The '195 Patent asserts that it would be "advantageous" and "beneficial" if a media system were "structured to facilitate transferring or transmitting one or more digital media files between two or more media devices" in order "to display, save, edit, manipulate, and/or transfer the one or more digital media files" on the receiving device. *Id*., 1:40-56. But the '195 Patent does not describe **how** the components of the media system are "structured to facilitate" the desired result of transferring a digital media file for display other than by using well-known generic components or broad all-encompassing language with no concrete mechanism for doing so. *Id.*

For example, the '195 Patent states that the "media terminal" required by the claims "may include a desktop computer, however **any** device structured to facilitate the practice of the present

4

system in the intended fashion may be utilized, including but in no way limited to a laptop or notebook computer, PDA, video game console, mobile telephone, etc." *Id.*, 2:64-3:2 (emphasis added).  Similarly, the "media node" required by the claims can be "a portable device such as a cellular or mobile telephone, PDA, portable mp3 player, laptop or notebook computer, or ***any other*** digital media device structured to facilitate the practice of the present invention…" *Id.*, 3:3-11 (emphasis added). The "computer network" required by the claims likewise can be any of "a Local Area Network ("LAN"), Wide Area Network ("WAN"), Private Area Network ("PAN"), peer-to-peer network, Bluetooth network, etc.," or one that "includes access to the World Wide Web, for example via the Internet." *Id.*, 3:20-30. Notably, the patent does not claim to have invented any of these well-known components but instead simply discloses that the claims may be performed using these components or on such components.

### 2.    <u>The '723 Patent</u>

The '723 Patent issued March 29, 2016 from U.S. Patent App. No. 13/494,097, filed June 12, 2012, and is entitled, "Enabling Social Interactive Wireless Communications." The '723 Patent is a continuation-in-part of the '195 Patent, and describes and claims essentially the same subject matter performed using many of the same generic computing and networking components.

The '723 Patent specification is virtually identical to the '195 Patent specification and does not add any new disclosure other than that the purported inventions are applicable to "mobile telephones," a "media system of a vehicle (e.g., an automobile)," or other "wireless mobile device." '723 Patent, 1:25-26, 2:47-48, 7:1-3; *see also* Ex. A (redline comparison of the specifications of the Patents-in-Suit).

B.    **The Asserted Claims**

DT alleges that two SXM streaming audio players, GDI-SXBR$_2$ and GDI-SXBR$_3$, infringe claims 1, 3, 5, 6, 8, and 9 of the '723 Patent and claims 1, 2, 3, 13, 17, 18, 19, and 23 of the '195 Patent (the "Asserted Claims"). *See* Complaint at ¶ 4.

1.    **The '723 Patent**

Claim 1 of the '723 Patent, recited below, is the only independent claim asserted from the '723 Patent and is representative:[1]

**1.** A media system, comprising:

[a] at least one media terminal disposed in an accessible relation to at least one interactive computer network,

[b] a wireless range structured to permit authorized access to said at least one interactive computer network,

[c] at least one media node disposable within said wireless range, wherein said at least one media node is detectable by said at least one media terminal,

[d] at least one digital media file initially disposed on at least one of said at least one media terminal or said at least one media node, said at least one media terminal being structured to detect said at least one media node disposed within said wireless range,

[e] a communication link structured to dispose said at least one media terminal and said at least one media node in a communicative relation with one another via said at least one interactive computer network,

[f] said communication link being initiated by said at least one media terminal,

[g] said at least one media node and said at least one media terminal being structured to transmit said at least one digital media file therebetween via said communication link, and

[h] said communication link is structured to bypass at least one media terminal security measure for a limited permissible use of the communication link by the media node to only transferring the at least one digital media file to, and displaying the at least one digital media file on, the at least one media terminal.

Claim 1 recites a "media system," but not any *specific* technology or device.  Rather, all the components and methods recited in Claim 1 are to generic computing and networking

---

[1] For the purposes of this motion, Claim 1 of the '723 Patent is representative of the other Asserted Claims from the '723 Patent, all of which are dependent claims and are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

technologies, as the specification confirms. *See, e.g.*, '723 Patent, 2:49-57 (listing components of "media node"); 2:36-48, 4:3-16 (listing components of "media terminal"); 2:58-3:15 (listing components of "communication link"); 3:47-50 (listing components of "digital media file").

The only remaining element of Claim 1 is the final element [h], which claims the abstract idea of a "communication link" that is "structured" in some undisclosed way "to bypass at least one media terminal security measure for a limited permissible use of . . . transferring . . . and displaying" the conventional "digital media file" on the conventional "media terminal." *Id*., 7:65-8:3.  Critically, the '723 Patent does not disclose or describe ***how*** to achieve the claimed result of bypassing the conventional security measures, and the patent itself is devoid of any ***specific*** mechanism, technology, or advance for achieving the abstract idea. *See generally id.*  For example, the "at least one media terminal security measure" to be bypassed can include any "networking device security measure," such as "a firewall, and/or passwords/keys such as, . . . Wi-Fi Protected Access keys, and/or Wireless Application Protocol keys." *Id*., 3:27-38.  There is no disclosure about ***how*** to bypass any of the firewalls, passwords, keys, Wi-Fi Protected Access keys, or Wireless Application Protocol keys. *Id.*  All the '723 Patent provides is that "it would be beneficial" to bypass a security measure. *Id*., 1:58-64, 5:17-44.

DT also asserts dependent Claims 3, 5, 6, 8, and 9, but these claims similarly recite only broad, generic, and conventional computing technologies and features. Specifically, that the "media terminal completely bypasses the security measure" (claim 3), that the media terminal is "an audio system" (claim 5), that the communication is a "peer-to-peer connection, bluetooth connection, and a WiFi connection" (claim 6), that the digital media file is "present[ed] . . . on a display" (claim 8), and that the digital media file is "provided by the . . . media node" (claim 9) all encompass generic well-known components. Absent in the '723 Patent claims is ***any specific***

mechanism for how to achieve the claimed result or any unconventional improvement in computing technology.

### 2.   The '195 Patent

DT also asserts three independent claims from the '195 Patent, Claims 1, 17, and 23.  Claim 1 is representative and is reproduced below.[2]

> **1.** A digital media communication protocol, comprising:
>
> [a] at least one media terminal disposed in an accessible relation to at least one interactive computer network,
>
> [b] a wireless range structured to permit authorized access to said at least one interactive computer network,
>
> [c] at least one media node disposable within said wireless range, wherein said at least one media node is detectable by said at least one media terminal,
>
> [d] at least one digital media file initially disposed on at least one of said at least one media terminal or said at least one media node, said at least one media terminal being structured to detect said at least one media node disposed within said wireless range,
>
> [e] a communication link structured to dispose said at least one media terminal and said at least one media node in a communicative relation with one another via said at least one interactive computer network,
>
> [f] said communication link being initiated by said at least one media terminal,
>
> [g] said at least one media node and said at least one media terminal being structured to transmit said at least one digital media file therebetween via said communication link, and
>
> [h] said communication link is structured to bypass at least one media terminal security measure.

Claim 1 of the '195 Patent recites a "digital media communication protocol," but, like the claims of the '723 Patent, does not describe any ***specific*** protocol.  Indeed, every component in Claim 1 is generic, conventional and ubiquitous. *See* '195 Patent, 3:3-11 (listing components of

---

[2] For the purposes of this motion, Claim 1 of the '195 Patent is representative of the other Asserted Claims from the '195 Patent, which are "substantially similar and linked to the same abstract idea." *Content Extraction*, 776 F.3d at 1348.

"media node"); 2:54-65 (listing components of "media terminal"); 3:12-35 (listing components of "communication link"); 3:65-43 (listing types of "digital media file").

Claim 1 also contains the element that "said communication link is structured to bypass at least one media terminal security measure," the same as element [h] above. *Id.*, 8:10-14. Like the '723 Patent, however, the '195 Patent does not explain, disclose, or describe *how* the communication link is "structured" to "bypass at least one media terminal security measure." *Id.* The '195 Patent, like the '723 Patent, merely provides the aspirational description that "it would be advantageous if the digital media communication protocol of the present specification is structured to facilitate transferring or transmitting one or more digital media files between two or more media devices." *Id.*, 1:40-45. The '195 Patent leaves it to the reader to determine *how* to achieve this result, and lacks any *specific* mechanism, technology, or advance for achieving this abstract idea—the same as the '723 Patent.  According to the specification, the "media terminal security measure" to be bypassed in the '195 Patent is exactly the same as the commonplace "security measures" described in the '723. *Id.*, 3:47-57 (describing routine and conventional security measures such as "a firewall, and/or passwords/keys such as, . . . Wi-Fi Protected Access keys, and/or Wireless Application Protocol keys").

DT also asserts dependent Claims 2, 3, 13, 18, and 19.  But like the dependent claims from the '723 Patent, these claims also recite broad, generic, and conventional computing technologies and features.  Specifically, that the "digital media file is initially disposed on said at least one media node," (claim 2), that the media terminal is structured to display the digital media file (claim 3), that the "communication link" is structured to bypass a "networking device security measure" (claim 13), that the "wireless range [is] structured to permit authorized access" to an interactive computer network (claim 18), and that the "media node" is "detectable by … one media terminal"

(claim 19).  These are all generic, conventional, and well-known.  Like the '723 Patent, the '195 Patent claims fail to teach **any specific** mechanism for achieving the claimed abstract idea.

### C. The Claimed Subject Matter Uses Only Routine and Conventional Computing Devices and Network Technologies

The Patents-in-Suit describe commonplace features that are implemented using broad, generic, and conventional computing devices and technology.  Nothing in the Asserted Claims or in the specifications limits the claims to any **specific advance** or improvement.  And nothing in the claims or specifications limits the Asserted Claims to any **specific technology** for transmitting video or audio data (the "digital media file") from one device (the "media node") to another (the "media terminal"), over Bluetooth or WiFi data channels (the "communication link") of a network (the "interactive communication network") that is "structured to bypass" at least one password or key (the "media terminal security measure"). *See, e.g.*, '723 Patent, 7:42-8:3.

Figure 4 in the '723 Patent (shown below) is reproduced in both patents and is representative of all the generic and conventional components of the purported inventions claimed in the Patents-in-Suit.



'723 Patent, 2:20-22, 2:31-33, 6:52-54, Fig. 4; '195 Patent, 2:46-48, 2:54-56, 7:4-7, Fig. 4.

10

As the specification explains with respect to Figure 4, "media node 30" at step 102 ('723 Patent, 7:12-13) can be "any . . . digital media device structured to facilitate the practice of the present system," including "a portable device such as a cellular or mobile telephone, PDA, portable mp3 player, laptop or notebook computer," or "a more stationary device or structure such as, for example, a desktop computer." As the specifications concede, the described "media node" are all commonplace devices routinely and regularly used in the field. *Id.*, 2:49-57.

The "media terminal 20" at step 104 (*Id.*, 7:16-18) can be "any device structured to facilitate the practice of the present system . . . including but in no way limited to a desktop computer, laptop or notebook computer, PDA, video game console, mobile telephone, media system of a vehicle (e.g., an automobile), etc.," that is "structured to detect and/or identify the media node 30" using parameters such as "a device name, model/serial number, Media Access Control ('MAC') address, or Internet Protocol ('IP') address." *Id.* at 2:36-48, 4:3-16. The specifications concede that these "media terminal" options described are commonplace and generic. *Id.*, 1:60-2:3; *see also* '195 Patent, 2:63-3:2.

The "communication link 70" via an "interactive computer network 40" established by the conventional "media terminal 20" at steps 106 and 108 ('723 Patent, 7:18-25) can be "one or more home, office, private, limited, or closed interactive computer networks 40 at least partially defined by one or more networking devices 42," including any "Local Area Network ('LAN'), Wide Area Network ('WAN'), Private Area Network ('PAN'), peer-to-peer network, near field communication ('NFC'), Bluetooth network, etc." communicating via conventional and ubiquitous networking protocols. *Id.*, 2:58-3:15.  All of these components are commonplace and generic as the patents confirm. *Id.*; *see also* '195 Patent, 3:19-35.

The "digital media file 60" transmitted from the conventional "media node 30" to the conventional "media terminal 20" via the conventional "communication link 70" at step 110 ('723 Patent, 7:25-34) "may include virtually any electronic file or data such as a digital photograph, video, audio, animation, text, or any other electronic document or object." *Id.*, 3:47-50. The specifications concede that all of these components are commonplace and generic. *Id.*, 3:47-50; *see also* '195 Patent, 3:65-4:3.

The only remaining non-conventional feature in the claims is the abstract idea of a "communication link" that is "structured," in some way not disclosed by the Patents-in-Suit, "to bypass at least one media terminal security measure" for transferring and displaying a generic "digital media file" on a conventional "media terminal." *See* '723 Patent, 7:65-8:3; *see also* '195 Patent, 8:14-15. But the specifications fail to disclose or describe *how* to generate a "communication link" that can be "structured" to "bypass at least one media terminal security measure." '723 Patent, 7:65-8:3; *see also* '195 Patent, 8:14-15; *see generally* Patents-in-Suit. This element is not based on any specific technological advance or invention, but instead is merely an abstract idea attempting to claim *any* mechanism of performing this result that someone might be able to figure out.

**D.    DT Alleges Infringement by SXM's Streaming Audio Players Seeking To Obtain A Quick Nuisance-Value Payment**

DT has filed *nearly 100* different lawsuits in various district courts, with the goal of extracting settlement for less than it would cost defendants to prove that the Patents-in-Suit are invalid or not infringed. *See* Ex. B (DT Litigations); *see also* Aug. 5, 2021 Order in Case No. 1:20-

cv-00258-RGA (D. Del.) at 2-3. None of DT's litigations asserting the Patents-in-Suit appear to have progressed beyond the initial stages of fact discovery. *See* Ex. B.[3]

Now, it is SXM's turn. But SXM is unwilling to fall in line with the stream of defendants paying "nuisance-value" amounts and instead respectfully seeks to have this Court find the Patents-in-Suit invalid under 35 U.S.C. § 101.

## IV.   LEGAL STANDARDS

### A.   Motions To Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded factual allegations but disregards "conclusory statements" and legal conclusions. *Simio v. FlexSim Software Prods.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020); *see also Intell. Ventures II v. Sprint Spectrum*, No. 2:17-CV-00661-JRG, 2018 WL 6804804, at *1 (E.D. Tex. Sept. 24, 2018) ("[T]he Court need not accept as true legal conclusions couched as factual allegations.").

### B.   This Court Routinely Dismisses Cases For Patent Ineligibility At The Pleading Stage

35 U.S.C. § 101 prescribes that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor . . . ." In *Alice v. CLS Bank*, the Supreme Court explained that Section 101 "contains an important implicit exception: Laws of nature, natural phenomena,

---

[3] For example, in *Display Technologies v. Sony Corporation Of America*, the case was dismissed just two days after the defendant filed its motion to dismiss for unpatentable subject matter. *See* Case No. 1-22-cv-00488 (S.D.N.Y.), Dkt. Nos. 18 (motion to dismiss filed April 11, 2022), 21 (notice of dismissal filed April 13, 2022). *See also Display Technologies v. Canon USA*, Case No. 2-17-cv-00192 (E.D. Tex.), Dkt. Nos. 18 (motion to dismiss filed July 14, 2017), 26 (notice of voluntary dismissal filed Aug. 4, 2017).

and abstract ideas are not patentable." 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics*, 569 U.S. 576, 589 (2013)). These "basic tools of scientific and technological work" are subject matter that is "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 71 (2012). Even if patent claims directed to laws of nature, natural phenomena, or abstract ideas meet all the other requirements for patentability, and are "new" and "inventive," they are still ineligible for patenting. *SAP Am. v. InvestPic*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (citing *Synopsys v. Mentor Graphics*, 839 F.3d 1138, 1151 (Fed. Cir. 2015) ("[A] claim for a *new* abstract idea is still an abstract idea.").

The Supreme Court outlined a two-part test to distinguish patents that "claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217.  At Step One, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents v. Active Network*, 790 F.3d 1343, 1346-48 (Fed. Cir. 2015).  If the claims pass Step One, courts then proceed to Step Two to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78-79)). Step Two is a "search for an 'inventive concept'—*i.e.*, en element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217-18.

This analysis "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion…." *SAP*, 898 F.3d at 1166.  The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) (citing

cases); *see also Berkheimer v. HP*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) (explaining that patent eligibility can be resolved on a motion to dismiss).

Consistent with the Federal Circuit's guidance, Courts in this district routinely grant 12(b)(6) motions to dismiss where, as here, the patent asserted is invalid under § 101 as being directed to patent-ineligible subject matter as evaluated under *Alice. See, e.g.*, *Repifi Vendor Logistics v. IntelliCentrics*, 2021 WL 1196271 at *9 (E.D. Tex. Mar. 30, 2021), *aff'd*, 2022 WL 794981 (Fed. Cir. Mar. 15, 2022) (granting defendants' Rule 12(b)(6) motion where claims are invalid under 35 U.S.C. § 101). *See also NexusCard v. Kroger*, Case No. 2:15-cv-968-JRG-RSP, 173 F. Supp. 3d 462, 469 (E.D. Tex. 2016), *aff'd*, 688 F. App'x 916 (Fed. Cir. 2017) (affirming motion to dismiss where patent was directed at an abstract idea and did not add an inventive step); *Uniloc USA v. Amazon.com*, 243 F. Supp. 3d 797, 811 (E.D. Tex. 2017), *aff'd*, 733 F. App'x 1026 (Fed. Cir. 2018) (granting motion to dismiss where asserted patent was directed to ineligible subject matter); *Cave Consulting Grp. v. Health Care Serv.*, 2017 WL 8809636, at *9 (E.D. Tex. Dec. 22, 2017), *report and recommendation adopted*, 2018 WL 703247 (E.D. Tex. Feb. 5, 2018), *aff'd*, 756 F. App'x 997 (Fed. Cir. 2019) (granting motion to dismiss where asserted patent was invalid for failure to recite patent-eligible subject matter under Section 101).

### C.   Claim Construction is Not Required to Conduct the Section 101 Analysis

Claim construction is "not strictly necessary" to evaluate claims under Section 101 at the 12(b)(6) stage. *Clear with Computers v. Dick's Sporting Goods*, 21 F. Supp. 3d 758, 764 (E.D. Tex. 2014); *see also Alice*, 573 U.S. at 216 (resolving section 101 analysis without performing claim construction).  DT has generically indicated that it opposes arguing subject matter eligibility before claim construction, but "[t]here is no requirement that the district court engage in claim construction before deciding § 101 eligibility." *Cyberfone Systems v. CNN Interactive Grp.*, 558 F. App'x 988, 991 n.1 (Fed. Cir. 2014).  And indeed, as explained below, the claims require only

commonplace, routine, and generic computing and networking technologies behaving precisely as expected in the course of normal, everyday usage.  Accordingly, SXM asks this Court to dispose of this case at the pleading stage.

## V.   THE PATENTS-IN-SUIT ARE PATENT-INELIGIBLE UNDER THE TWO-STEP *ALICE* ANALYSIS

The Patents-in-Suit are invalid under § 101 as a matter of law.  Under the two-part test outlined in *Alice*, the Asserted Claims are directed to abstract ideas for transferring digital media files for display.  The claims, when considered element-by-element and as an ordered combination, fail to provide the requisite "inventive concept" that transforms the abstract idea into a patent-eligible one.  Accordingly, the claims are not patent-eligible, and SXM requests that DT's case be dismissed with prejudice.

### A.   *Alice* Step One: The Asserted Claims Are Directed To An Abstract Idea

The first step of the *Alice* inquiry requires that the court consider the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents*, 790 F.3d at 1346.  Courts examine the "focus of the claimed advance over the prior art" to determine what purported invention the claims are "directed to." *Trading Techs. Int'l v. IBG*, 921 F.3d 1378, 1384 (Fed. Cir. 2019); *Bridge and Post v. Verizon Commn's*, 778 F. App'x 882, 887 (Fed. Cir. 2019) (analyzing the specification's "description of 'the problem facing the inventor'" to determine what claims were directed to).  Where the claimed advance is a desired "result or effect," as opposed to a "specific means" of achieving the result, the claims are directed to an unpatentable abstract idea. *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *Interval Licensing v. AOL*, 896 F.3d 1335, 1344-46 (Fed. Cir. 2018) (claims that include "broad, result-oriented" language, "without any limitation on how to produce that result," are directed to a "patent-ineligible concept").

### 1.      The Patents-in-Suit Are Directed To The Abstract Idea Of Transferring A Digital Media File

As explained below, the Patents-in-Suit are directed to abstract ideas themselves without identifying **how** to implement or produce the claimed result. *See McRO v. Bandai Namco Games Am.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("A patent may issue for the means or method of producing a certain result, or effect, and not for the result or effect produced.") (quoting *Diamond v. Diehr*, 450 U.S. 175, 182 n.7 (1981)).

In particular, federal courts look to the treatment of similar claims to determine if the claims are directed to an abstract idea. *See Affinity Labs of Texas v. DIRECTV*, 838 F.3d 1253, 1260 (Fed. Cir. 2016) (comparing asserted claims to claims in "several of this court's recent cases").  The Federal Circuit has consistently held that patents (like those here) broadly claiming, in functional terms, transmission of digital media from one device to another over a computer network to be directed to an abstract idea where the patent fails to identify how the result is achieved. *See Free Stream Media v. Alphonso*, 996 F.3d 1355, 1358-59, 1366 (Fed. Cir. 2021) (finding "nothing inventive disclosed in the claims that permits communications that were previously not possible").

*Free Stream Media v. Alphonso* is illustrative.  There, the Federal Circuit found claims to be "abstract" where they were directed to "bypassing" a client device's sandbox security features because "the asserted claims **do not at all describe how** that result is achieved." *Free Stream*, 996 F.3d at 1363-64 (emphasis added).  The Federal Circuit explained that the *Alice* Step One inquiry turns on whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Id.*  Claims that fail "to recite a practical way of applying an underlying idea" cannot avoid ineligibility. *Id.*

Like the claims in *Free Stream Media*, the Asserted Claims fail to include ***any limitation*** "relating to overcoming the supposed communication barriers between" the mobile devices during the file transfer. *Id.*; *see also* '723 Patent, 7:65-8:3; '195 Patent, 8:14-15.  While all of the Asserted Claims require a "communication link … structured to bypass at least one media terminal security measure," the Asserted Claims "do not at all describe how that result is achieved." *Free Stream*, 996 F.3d at 1363-64.  Nor do they recite "an improvement in computer functionality." *Id.*  Indeed, the Federal Circuit explained that, "[a]ll that is required at the eligibility phase is that the claim itself must identify ***how*** that functional result is achieved by limiting the claim scope to structures ***specified at some level of concreteness***, in the case of a product claim, or to ***concrete action***, in the case of a method claim." *Id.* (emphasis added).  But the Asserted Claims cannot meet even that threshold for eligibility.  The claims here are even less specific than those found in *Free Stream* where the specification actually provided mechanisms to bypass security controls, and the claims were still found invalid as patent-ineligible.  Here, the specifications of the Patents-in-Suit do not even do that much by failing entirely to describe how to achieve the claimed result.

Even if DT's "claimed advance" is in the "ability" to bypass at least one media terminal security measure in the file transfer, that is simply nothing more "than a mere use of a computer as a tool" on which to perform the recited function, not an advancement. *Free Stream*, 996 F.3d at 1364-65.  Claims, like the Asserted Claims here, "regarding computer applications must be directed to an improvement in the capabilities of computer technology as opposed to simply providing for the use of a computer to perform … tasks for which a computer is used in its ordinary capacity." *Semantic Search Techs. v. Aldo U.S.*, 425 F. Supp. 3d 758, 775 (E.D. Tex. 2019); *see also Enfish v. Microsoft*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016) ("[T]he first step in the *Alice* inquiry in this case asks whether the focus of the claims is on the specific asserted improvement

18

in computer capabilities … or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.").   Like the claims in *Free Stream*, "the alleged technological improvement does nothing more than implement a computer to achieve the abstract idea" of bypassing at least one media terminal security measure and do not "explain ***how*** that result improves the operability of these devices." *Free Stream*, 996 F.3d at 1365 (emphasis added). [4]

### 2.    The Patents-in-Suit Fail To Disclose Any New Improvement In Computer Or Network Technology

While the foregoing is sufficient to show the abstract nature of the Patents-in-Suit, there is more.  Neither the Asserted Claims nor the specifications of the Patents-in-Suit disclose ***any new*** computer, ***any new*** computer network or "a ***new*** physical combination of the two." *In re TLI Comm's LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (emphasis added).   In *TLI Communications*, the Federal Circuit found patent claims ineligible under § 101 where the specification failed to disclose "a new telephone, a new server, or a new physical combination of the two," and instead acknowledged that "existing telephone systems could transmit pictures, audio, and motion pictures'" to a "server . . . performing generic computer functions such as storing, receiving, and extracting data." *Id.*  In its Step One analysis, the Federal Circuit explained that this confirmed that the patentee's focus was ***not*** on an improvement in existing telephone units or servers to provide "a solution to a technological problem," but rather the focus was on "the abstract idea of classifying and storing digital images in an organized manner" being performed on a conventional computer. *Id.* at 612-13 ("[The claims] are directed to the use of conventional

---

[4] The Patents-in-Suit only recite that "it would be beneficial if the digital media communication protocol includes a communication link structured to bypass at least one or more security measures," and list various generic "security measures" (*e.g.*, "a password and/or firewall, employed by the interactive computer network, the corresponding networking devices, and/or the particular media devices themselves").  But, as noted above, the Patents-in-Suit do not disclose or describe (and the claims do not require) ***any specific*** way to achieve this result "beyond … using generic processes and machinery." *Free Stream*, 996 F.3d at 1365.

or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two."). That is the case here.

The Asserted Claims do not recite, nor do the specifications of the Patents-in-Suit describe, *any new* "solution to a technological problem." *Id.*  The Patents-in-Suit leverage *only* conventional and commonplace computing devices and networking technologies, and are focused on the abstract idea of transmitting a generic digital file via a "communication link [that] is structured to bypass at least one media terminal security measure." *See, e.g.*, '732 Patent, Claim 1; *See Interval Licensing*, 896 F.3d at 1343 (finding claims abstract because they were "drafted in such a result-oriented way that they amounted to encompassing the principle in the abstract, no matter how implemented").  The Patents-in-Suit *do not* create (or describe) any new communication system, *do not* create (or describe) any new component of a communication system, and *do not* create (or describe) any new way to transfer data or digital files in a communication system.  Just like the claims in *Free Stream* and *TLI* that were found to be patent-ineligible, the Asserted Claims in this case also run afoul of § 101 for being directed to an abstract idea.

> **B.** ***Alice* Step Two: The Claims Lack An Inventive Concept To Transform The Abstract Idea Into Patent-Eligible Subject Matter**

While the Patents-in-Suit represent classic examples of unpatentable abstract ideas at Step One, the Federal Circuit has explained that the inquiry should continue to Step Two of the *Alice* test.  Under Step Two, the Court must "consider the elements of each claim both individually and as an ordered combination" to determine whether they provide an "inventive concept" sufficient to ensure that the patent in practice "amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217-18 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys*, 566 U.S. 66, 72-73, 79); *TLI Commc'ns*, 823 F.3d at 613 (analyzing claims both individually and

as an ordered combination).  The Federal Circuit has explained that the "inventive concept" "must be ***evident in the claims***," not imported from the specification. *RecogniCorp v. Nintendo*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (emphasis added).  "[L]imiting the claims to the particular technological environment… is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp. v. Alstom*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).  Here too, the claims of the Patents-in-Suit fail the *Alice* Step Two inquiry because the well-known, generic and conventional devices and technologies, behaving precisely as expected according to their normal use, do not provide the necessary "inventive concept" to transform the claims, whether evaluated individually or as an ordered combination.

### 1. The Patents-in-Suit Describe Only Generic Computing And Networking Technologies

At the outset, the Patents-in-Suit describe the claim elements themselves as generic and conventional computing and networking technologies that were well-known and routinely used by individuals in this field. *See* '723 Patent at 2:31-47, 2:49-57, 2:58-3:15, 3:27-38, 3:39-50; *see also* '195 Patent at 2:54-3:2, 3:3-11, 3:12-35, 3:47-58, 3:59-4:3.  This confirms that there are no disputed issues of fact that would preclude resolving this case at Step Two. *See Uniloc USA v. ADP*, 772 F. App'x 890, 900 (Fed. Cir. 2019) (affirming district court's analysis where the court supported its factual analysis with reference to the specification); *see also Aatrix Software v. Green Shades Software*, 890 F.3d 1354, 1356 (Fed. Cir. 2018) (Moore, J., concurring) ("In a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute [of fact under Step Two].").

Aside from the commonplace and well-known elements of the claims, the only remaining element is the limitation that the claimed "communication link" be "structured to bypass at least

one media terminal security measure." '732 Patent, 7:65-8:4; '195 Patent, 8:14-15.  But, as noted above, the Patents-in-Suit fail to discuss, disclose, or describe ***how*** to structure the communication link to achieve the claimed result of bypassing a security measure to transfer and display the digital media file. '723 Patent, 1:54-63, 5:17-21; '195 Patent, 1:40-51, 5:36-40.  The Patents-in-Suit merely provide aspirational language and instruct the reader to "apply" the abstract idea, without disclosing ***any*** unique or inventive hardware or software to do so.  Claims, like the Asserted Claims, that "do nothing more than spell out what it means to apply it on a computer cannot confer patent-eligibility," particularly at Step Two, where, as here, the "recited components behave ***exactly as expected according to their ordinary use***." *TLI Commc'ns*, 823 F.3d at 615 (emphasis added).

### 2.    The Result-Oriented Claim Language Cannot Make The Claims Patent-Eligible

The functional and result-oriented claim language confirms the patent-ineligibility of the Asserted Claims.  Such result-oriented language is "irrelevant" to whether there is an inventive concept at Step Two because it just "restates" the abstract idea. *BSG Tech v. Buyseasons*, 899 F.3d 1281, 1291 (Fed. Cir. 2018) ("As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it.").  Notably, the Federal Circuit has explained that the abstract idea itself "cannot supply the inventive concept." *ChargePoint v. SemaConnect*, 920 F.3d 759, 775 (Fed. Cir. 2019).  Where the application of the abstract idea uses "conventional and well-understood techniques—e.g., a generic computer" (as in the Asserted Claims here), "the claim ***has not*** been transformed into a patent-eligible application of an abstract idea." *Ubisoft Entm't, S.A. v. Yousician Oy*, 814 Fed. App'x 588, 592 (Fed. Cir. 2020) (emphasis added).

Here, the recited elements "fall squarely within [Federal Circuit] precedent finding generic computer components insufficient to add an inventive concept to an otherwise abstract idea." *TLI*

*Comm'n's*, 823 F.3d at 614.  The potential elements that satisfy the claims include, for example, components listed in the specification (recited below), all of which have been in use and known for decades, and all of which "behave exactly as expected according to their ordinary use" as the Patents-in-Suit admit. *TLI Comm'n's*, 823 F.3d at 614-15.  For example:

- a laptop or notebook computer, PDA, video game console, mobile telephone, media system of a vehicle ('723 Patent, 2:45-48);

- mobile telephones, cellular telephones, portable MP3 players, handheld or portable game consoles (*id.*, 1:23-28);

- home, office, private, limited, or closed interactive computer networks (*id.*, 2:60-61);

- devices with access to the World Wide Web, including via cable or DSL modem, or via one or more satellites and/or one or more towers or base stations (*id.*, 3:8-14);

- an interactive computer network including a Local Area Network ("LAN"), Wide Area Network ("WAN"), Private Area Network ("PAN"), peer-to-peer network, near field communication ("NFC"), Bluetooth network (*id.*, 2:65-3:2);

- certain security measures, such as a firewall, and/or passwords/keys such as, for example, Wi-Fi Protected Access ("WPA") keys, and/or Wireless Application Protocol ("WAP") keys (*id.*, 3:30-37);

- vehicle media systems, which may be part of a vehicle navigation system (*id.*, 7:6-11); and

- virtually any electronic file or data such as a digital photograph, video, audio, animation, text, or any other electronic document or object (*id.*, 3:47-50).

### 3.   <u>The Dependent Claims Fail To Add Any Inventive Concept</u>

The asserted dependent claims likewise do not make the abstract idea any less abstract or more inventive because, "[a]s a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it." *See BSG Tech*, 899 F.3d at 1291.  Claim limitations, such as those in the Patents-in-Suit, "recited at a high level of generality and conventional" do not "solve a technology-based problem" or provide an inventive concept. *Interval Licensing v. AOL*, 896 F.3d 1335, 1347 (Fed. Cir. 2018).  Indeed, the Federal Circuit routinely declines to find an inventive concept where the specification recites "many different arrangements for the disposition of various

components within the system," and the "components involved… are generic." *W. View Research v. Audi AG*, 685 F. App'x 923, 926-27 (Fed. Cir. 2017). So too is the case here.

For example, the Patents-in-Suit recite broad (and seemingly disparate) computing and networking features at only the highest level of generality.[5] *See, e.g.*, '723 Patent, 2:40-48 (noting that "a computer" may serve as a component of claimed embodiments, but so will "any device structured to facilitate the practice of the present system in the intended fashion may be utilized, including but in no way limited to a desktop computer, laptop or notebook computer, PDA, video game console, mobile telephone, media system of a vehicle (e.g. an automobile), etc."); *id.*, 2:60-63 (listing "home, office, private, limited, or closed" computer networks "defined by one or more networking devices," without specifying any particular networking device); *id.*, 2:65-3:2 (listing "Local Area Network ("LAN"), Wide Area Network ("WAN"), Private Area Network ("PAN"), peer-to-peer network, near field communication ("NFC"), Bluetooth network, etc." as potential options for the claimed interactive "computer network"); *id.*, 3:10-11 (disclosing that access to the "World Wide Web" should be included, but "may be facilitated in any manner"); 3:47-50 (listing "virtually any electronic file or data such as a digital photograph, video, audio, animation, text, or any other electronic document or object" as potential "digital media files").

The asserted dependent claims recite these broad, generic limitations, making them incrementally narrower applications of the same abstract idea and are insufficient to provide an inventive concept. *See supra* Section III.B.  "As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it." *BSG Tech*, 899 F.3d at 1291.

---

[5] The broad, all-encompassing nature of the claims is reflected in the seemingly disparate components that can constitute a system where the claimed invention can function both on a video game console, but also an automobile. *See* '723 Patent, 2:40-48.

4.      **The Claims Are Patent-Ineligible Even When The Elements Are Considered As An Ordered Combination**

Nothing in the ordered combination of the conventional elements in the claims changes the result at Step Two.  The stepwise order of the claims is simple, routine, and conventional: first detect a wireless device, then initiate a communication link via a computer network, and then bypass a security measure in order to transfer and display a digital media file on the receiving device. '723 Patent, 7:42-8:4; '195 Patent, 7:57-8:15.  There is no inventive concept where a patent simply applies an abstract idea in a routine and conventional way where the components "behave exactly as expected according to their ordinary use."  *TLI Comm'ns*, 823 F.3d at 614-15; *see also Two-Way Media v. Comcast Cable Comm's*, 874 F.3d 1329, 1341 (Fed. Cir. 2017) ("Nor do we see any inventive concept in the ordered combination of these steps. The steps are organized in a completely conventional way—data are first processed, sent, and once sent, information about the transmission is recorded.  The claims thus fail to describe a 'specific, discrete implementation of the abstract idea' sufficient to qualify for eligibility under § 101.").

The specifications and claims of the Patents-in-Suit similarly fail to disclose or describe "how its *particular arrangement of elements* is a technical improvement over prior art ways" of conducting a digital file transfer. *Bascom Glob. Internet Servs. v. AT&T Mobility*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).  For example, in *Bascom*, the Federal Circuit explained that, while the claims in that case were directed to an abstract idea (filtering content on the internet), the claims did not "merely recite the abstract idea of filtering content along with the requirement to perform it on the Internet, or to perform it on a set of generic computer components," because "[s]uch claims would not contain an inventive concept" at Step Two of the analysis. *Id.*  Instead, the claims recited "a *specific, discrete implementation* of the abstract idea of filtering content," which "was already a known concept, and the patent describe[d] how its particular arrangement of elements is

a technical improvement over prior art ways of filtering such content." *Id.* at 1350 (emphasis added).  Here, unlike in *Bascom,* no such "technical improvement" is disclosed or described **anywhere** in the Patents-in-Suit—not in the specifications, not in the Asserted Claims, not in the claim elements themselves individually, and certainly not in the ordered combination of the conventional claim elements behaving exactly as expected according to their routine use.

Accordingly, SXM respectfully asks this Court to find that the Asserted Claims, which are directed to an abstract idea at Step One, fail Step Two because they do not contain the requisite "inventive concept" to transform the claimed abstract idea into a patent-eligible application of it. *Alice*, 573 U.S. at 217-18.

## VI.    <u>CONCLUSION</u>

For at least the foregoing reasons, SXM respectfully requests that this Court dismiss DT's Complaint with prejudice because the Patents-in-Suit are invalid under 35 U.S.C. § 101.

Dated: March 4, 2024

Respectfully submitted,

By:   _s/ Mark A. Baghdassarian_
      Mark A. Baghdassarian
      Shannon Hedvat
      Jeffrey Coleman
      mbaghdassarian@kramerlevin.com
      shedvat@kramerlevin.com
      jcoleman@kramerlevin.com
      Kramer Levin Naftalis & Frankel LLP
      1177 Avenue of the Americas
      New York, NY 10036
      Tel: (212) 715-9100
      Fax: (212) 715-8000

      Melissa R. Smith
      Texas Bar No. 24001351
      **GILLAM & SMITH, LLP**
      303 South Washington Avenue
      Marshall, Texas 75670
      Telephone: (903) 934-8450
      Facsimile:  (903) 934-9257
      Email: melissa@gillamsmithlaw.com

      ***Counsel for Defendant Sirius XM Radio Inc.***

**<u>CERTIFICATE OF SERVICE</u>**

I certify on March 4, 2024, the foregoing document was filed electronically with the Court, with notice of filing generated and sent electronically via the Court's CM/ECF system to all counsel of record.

> By:  */s/ Melissa R. Smith*
> Melissa R. Smith

**CERTIFICATE OF COMPLIANCE WITH THE COURT'S 35 U.S.C. § 101 <u>MOTION PRACTICE ORDER</u>**

\_\_\_\_\_  The parties **agree** that prior claim construction is not needed to inform the Court's analysis as to patentability.

\_\_x\_\_\_  The parties **disagree** on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

Dated: March 4, 2024                    Respectfully submitted,

> By:  *s/ Mark A. Baghdassarian*
> Mark A. Baghdassarian
>
> ***Counsel for Defendant Sirius XM Radio Inc.***

28