


THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DISPLAY TECHNOLOGIES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO INC.,<br><br>    Defendant. | CASE NO. 2:23-cv-00591-JRG-RSP<br><br>JURY TRIAL DEMANDED |

**BRIEF IN OPPOSITION TO DEFENDANT'S FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. DISPOSITION OF THIS ISSUE AT THE PLEADING STAGE IS INAPPROPRIATE .....1

II. THE ASSERTED CLAIMS ARE PATENT ELIGIBLE UNDER 35 U.S.C. § 101...................3

    A. *Alice* Step One – The Claims are Not Directed to an Abstract Idea ................................6

    B. *Alice* Step Two – The Patent Claims Include an Inventive Concept ..............................9

III. CLAIM CONSTRUCTION ........................................................................................................10

IV. CONCLUSION ............................................................................................................................12

# TABLE OF AUTHORITIES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018) ..............................................................................................2

*Accenture Global Servs., GMbH v. Guidewire Software, Inc.*,
   728 F.3d 1336, 1344-45 (Fed. Cir. 2013) ................................................................................9

*Alice v. CLS Bank*, 134 S.Ct. 2347 (2014) .......................................................................... passim

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288, 1300 (Fed. Cir. 2016) ....................................................................................5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................12

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
   687 F.3d 1266, 1273–74 (Fed. Cir. 2012) ............................................................................1, 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) ........................................................12

*Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ............................................1, 3, 5

*Bilski*, 561 U.S. 593, 604–605, 611 .............................................................................................8

*BuySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ........................................9

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) ......................................3

*Free Stream Media v. Alphonso*, 996 F.3d 1355, 1363-64 (Fed. Cir. 2021) ...............................6

*GreatGigz Solutions, LLC v. East Texas Border Health Clinic d/b/a Genesis Primecare,* Case No 2:21-cv-00370-JRG, Dkt. No. 29 (June 28, 2022 E.D. Tex.) .................11

*In re TLI Commc'ns.*, 2015 WL 627858, at *8 ..............................................................................8

*Lormand v. U.S. Unwired, Inc.*,
   565 F.3d 228, 232 (5th Cir. 2009) ..........................................................................................2

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
   890 F.3d 995, 999 (Fed. Cir. 2018) ........................................................................................2

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91, 97 (2011) ............................................................................................................2

*Milliman, Inc. et al. v. Gradient A.I. Corp., et al.*,
   1:21-cv-10865, Dkt. No. 43 (D. Mass. March 11, 2022) .......................................................3

*MyMail, Ltd. v. ooVoo, LLC*,
   934 F.3d 1373, 1379 (Fed. Cir. 2019) ....................................................................................1

*Northwestern University v. Universal Robots A/S et al.*,
    No. 1:21-cv-00149, Dkt. No. 34 (D. Del. March 28, 2022) ....................................................... 3

*PPS Data LLC v. Jack Henry & Assoc., Inc.*,
    404 F.Supp.3d 1021, 1039 (E.D. Tex. 2019) ................................................................................ 5

*Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*,
    2020 WL 278481 at *4 (W.D. Tex. Jan. 10, 2020) ..................................................................... 4

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295, 1304 (Fed. Cir. 2019) ......................................................................................... 5

*Trustees of Columbia University in the City of New York v. Nortonlifelock, Inc.*,
    3:13-cv-00808, Dkt. No. 718 (E.D. Va. February 2, 2022) ........................................................ 3

*Ultramercial, Inc. v. Hulu*,
    772 F.3d 709, 715 ....................................................................................................................... 8

*Voxer, Inc. and Voxer IP LLC v. Facebook, Inc. and Instagram LLC*,
    1:20-cv-00655, Dkt. No. 236 (W.D. Tex. February 15, 2022) .................................................... 3

*Westwood One, LLC v. Local Radio Networks, LLC*,
    1:21-cv-00088, Dkt. No. 45 (N.D. Ind. January 21, 2022) .......................................................... 3

Plaintiff Display Technologies, LLC ("Plaintiff" or "DT") respectfully submits this Brief in Opposition to Defendant's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss [Dkt. No. 20] ("Defendant's Motion"). As will be shown in greater detail herein below, Defendant's Motion lacks merit and should be summarily denied.

## I. DISPOSITION OF THIS ISSUE AT THE PLEADING STAGE IS INAPPROPRIATE

First and foremost is the obvious fact that this issue is presented to the Court at the pleading stage. As such, the Court is left with zero developed record from which it could possibly assess what was, and what was not, well-understood, routine, and conventional in the art *as of December 7, 2007*, not to mention a lack of familiarity with the disclosures *and an absence of claim construction*. The Asserted Claims here cannot and should not be summarily invalidated when there are *factual disputes* relating to the non-abstract nature of the Asserted Claims and the existence of an inventive concept. For example, Defendant fails to meet its burden to deny the factual basis in Plaintiff's Amended Complaint [Dkt. No. 18] ("Amended Complaint") as to "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field," which is a question of fact that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Recent Federal Circuit jurisprudence has hampered courts' authority to issue ineligibility determinations at a case's earliest stages. For example, the Federal Circuit has recognized that resolution of section 101 motions is inappropriate until after claim construction. *See, e.g.*, *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). The Federal Circuit has also recognized that deciding Rule 12(b)(6) motions invoking section 101 requires factual

presumptions favoring non-movants.

At the pleading stage, the Court is required by law not only to accept all factual allegations in the operative complaint as true, but also to draw all reasonable inferences in the patentee's favor. For example, In *Aatrix Software, Inc. v. Green Shades Software, Inc.*, the Federal Circuit acknowledged how factual issues undergird both *Alice* steps. 882 F.3d 1121 (Fed. Cir. 2018) (*citing Alice v. CLS Bank*, 573 U.S. 208 (2014)). Because a court considering a Rule 12(b)(6) motion must accept a complaint's factual allegations as true, a complaint or counterclaim can recite concrete allegations regarding *Alice*'s underlying factual issues to guard its asserted patents from an early ineligibility determination. *See id.* at 1128; *see also Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (describing presumptions favoring non-movants in this Circuit); *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) ("In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor.").

When the complaint contains concrete allegations regarding the "claimed combination's improvement to the functioning of the computer," the asserted patents can survive a Rule 12(b)(6) motion at *Alice* step one. *Aatrix*, 882 F.3d at 1128. When the complaint contains concrete allegations that "individual elements and the claimed combination are not well-understood, routine, or conventional activity," the asserted patent can survive a Rule 12(b)(6) motion at *Alice* step two. *Id.*

Thus, accused infringers invoking section 101 in a Rule 12(b)(6) motion face an uphill battle. It is now well established that patents are presumed valid. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 97 (2011). Overcoming that presumption demands clear and convincing

evidence, even in the eligibility context. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019). Indeed, any fact "pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Plaintiff has not overcome these procedural obstacles.

Indeed, courts across the country have denied Rule 12(b)(6) and Rule 12(c) motions based on § 101 at the pleading stage. *See, e.g., Northwestern University v. Universal Robots A/S et al.*, No. 1:21-cv-00149, Dkt. No. 34 (D. Del. March 28, 2022); *Milliman, Inc. et al. v. Gradient A.I. Corp., et al.*, 1:21-cv-10865, Dkt. No. 43 (D. Mass. March 11, 2022); *Voxer, Inc. and Voxer IP LLC v. Facebook, Inc. and Instagram LLC*, 1:20-cv-00655, Dkt. No. 236 (W.D. Tex. February 15, 2022); *Trustees of Columbia University in the City of New York v. Nortonlifelock, Inc.*, 3:13-cv-00808, Dkt. No. 718 (E.D. Va. February 2, 2022); *Westwood One, LLC v. Local Radio Networks, LLC*, 1:21-cv-00088, Dkt. No. 45 (N.D. Ind. January 21, 2022).

## II.     THE ASSERTED CLAIMS ARE PATENT ELIGIBLE UNDER 35 U.S.C. § 101

Defendant's Motion raises the now customary boilerplate argument that all claims in the two Asserted Patents ("Patent Claims") are invalid because they allegedly fail to recite patent-eligible subject matter. Defendant's Motion is premised on a gross oversimplification of the Patent Claims and the underlying premise that virtually no invention remotely relating to transferring digital media files can be patent eligible. Accordingly, Defendant's Motion fails on the merits and should be denied.

As the Court is well aware, the Patent Claims are presumptively novel and non-obvious, presumptively drawn to patent-eligible subject matter, and presumptively properly examined and allowed by the Examiner(s) at the United States Patent Office. *See, e.g., Cellspin Soft, Inc. v. Fitbit, Inc., et al.,* 927 F.3d 1306, 1319 (Fed. Cir. 2019). Further, at the pleading stage, the Court is required by law not only to accept all factual allegations in the operative Complaint as true, but

also to draw all reasonable inferences in the patentee's favor. *Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*, 2020 WL 278481 at *4 (W.D. Tex. Jan. 10, 2020). Here, just as in the *Cellspin* case, the Complaint contains a multitude of specific and plausible statements of fact establishing the non-abstract nature of the Patent Claims.

The Amended Complaint alleges that, as of the Date of Invention in December 2007:

> The deficiencies in the state of the art as of the Date of Invention were problematic. A vast majority of portable devices are equipped with memory devices, such as hard drives and/or removable flash or memory cards, which are capable of holding or storing large amounts of data and or digital media files including digital photographs, videos, audio/music files, etc. With the advent of such devices having these capabilities, individuals or users are more inclined to carry around their media files, such as, for example, digital photo albums, family videos, and/or favorite music tracks. However, many of the portable devices include relatively small display screens, some of which display poor quality photos and/or videos. In addition, the speakers associated with the corresponding portable device(s) are typically rather small and produce minimal or poor sound therefrom. *In addition, the individuals or users of the media devices may desire to share the digital media files and/or transfer, display, or play the files on a computer or other media device equipped with a larger or better quality screen, or having higher quality speakers than that disposed on the portable device(s)*. In addition, some media devices may have better editing software, or have access to the World Wide Web to further distribute the digital media files.
>
> *See* Dkt. No. 18 at pages 3-4, ¶ 13 (emphasis added).
>
> The claims of the Display Tech Patents overcome deficiencies existing in the art as of the date of invention, and comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas. For example, the claims of the Display Tech Patents require a communication link that is structured to bypass one or more security measures, such as a password and/or firewall, employed by the interactive computer network, the corresponding networking devices, and/or the particular media devices themselves. This facilitates the transfer or transmission of digital media files between two or more media devices, *and is an unconventional technological improvement over the prior art*.

*See* Dkt. No. 18 at pages 4-5, ¶ 14 (emphasis added).

The claims of the Display Tech Patents are not drawn to laws of nature, natural phenomena, or abstract ideas. *The specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention*.

*See* Dkt. No. 18 at page 5, ¶ 15 (emphasis added).

Further, the claims of the Display Tech Patents contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.

*See* Dkt. No. 18 at page 5, ¶ 16.

The facts as plead are plainly relevant to the presence of inventive concepts captured in the Patent Claims. These *specific* factual allegations in the Amended Complaint define the state of the art as of the Date of Invention and provide a basis in fact to conclude that the Patents Claims are indeed patent-eligible. These specific factual allegations, as well as the common written specification of the Asserted Patents, define benefits and technological improvements captured in the Patent Claims over the prevailing art as of December 2007. Thus, the Patent Claims are patent-eligible. *See PPS Data LLC v. Jack Henry & Assoc., Inc.,* 404 F.Supp.3d 1021, 1039 (E.D. Tex. 2019) ("when the claimed technology overrides the routine and conventional sequence of events in order to provide a technological benefit, it is eligible at *Alice* Step Two") (citing *SRI Int'l, Inc. v. Cisco Sys., Inc.,* 930 F.3d 1295, 1304 (Fed. Cir. 2019). Stated differently, claims such as these include an inventive concept when they provide a technological solution to a technological problem. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1300 (Fed. Cir. 2016).

In *Berkheimer*, the Court of Appeals fully credited the specification's disclosure of the state of the art, as well as its recitation of improvements over the art, as sufficient to create fact issues precluding summary judgment, as long as such were captured in the claims. *Berkheimer v.*

*HP Inc.,* 881 F.3d 1360, 1369 (Fed. Cir. 2018); *see also PPS Data,* 404 F.Supp.3d at 1040-41 ("The Federal Circuit routinely relies on factual assertions in patent specifications not only as *some* evidence, but *conclusive* evidence of inventiveness") (emphasis added). Of course, the benefits of the inventions, as noted in the Amended Complaint, are conferred due to the inventive concepts as claimed, as opposed to the mere practice of the "abstract idea" suggested by Defendant of "transferring a media file." Plaintiff's Motion at 17.

Again, the specific factual allegations in the Amended Complaint, which must be taken as true, define benefits and technological improvements captured in the Patent Claims over the prevailing art as of December 2007. These factual assertions are drawn directly from the intrinsic record of the written specification, and explain how the Patent Claims capture unconventional technological improvements over the art. As such, they can be considered as conclusive evidence of the facts as stated. *Berkheimer,* 881 F.3d at 1369; *PPS Data,* 404 F.Supp.3d at 1040-41.

Plaintiff's Motion cannot overcome the factual assertions in the Amended Complaint and the factual assertions derived directly from the written specification, and therefore should be denied.

### A. *Alice* Step One – The Claims are Not Directed to an Abstract Idea

Defendant argues that "the Federal Circuit found claims to be 'abstract' where they were directed to 'bypassing' a client's device's sandbox security features because 'the asserted claims ***do not describe how*** the result is achieved.'" Defendant's Motion at 18 (emphasis in original) (*quoting Free Stream Media v. Alphonso*, 996 F.3d 1355, 1363-64 (Fed. Cir. 2021)). Defendant further argues that "the Asserted Claims fail to include ***any limitation*** 'relating to overcoming the supposed communication barriers between' the mobile devices during the file transfer." *Id.* (emphasis in original) (*quoting Free Stream*, 996 F.3d at 1363-64). This is patently false.

As an initial matter, the specifications of both the '723 Patent and the '195 Patent describe in detail how the communication is "structured to bypass at least one media terminal security measure," as recited in the Asserted Claims. For example, the specification of the ''723 Patent recites:

> Referring again to FIG. 1, in the embodiment wherein the interactive computer network 40 and the wireless range 50 are at least partially defined by networking device(s) 42, such as a router, access point, or switch, once established, *the communication link 70 is structured to be disposed between the media terminal 20 and the media node 30, and through the corresponding networking device(s) 42*. Particularly, in at least one implementation of the present system 10, *because the media terminal 20 is disposed in an accessible relation to the interactive computer network 40, and because the communication link 70 is created and/or initiated by the media terminal 20, the communication link 70 can be established regardless of whether the corresponding media node 30 independently has access to the interactive computer network 40*. In addition, *the initiation of the communication link 70 by the media terminal 20, such as through a request to establish a communication link 70, at least partially allows the communication link 70 to bypass the firewall or other media terminal security measure(s) 21*.

See '723 Patent at 5:26-44 (emphasis added).

Thus, the specification of the Asserted Patents describe the structure required to "bypass at least one media terminal security measure." (hereinafter "the Bypass Function"). Specifically, the specification describes the relationship between the physical elements that enable the Bypass Function.

The elements in the Asserted Claims mirror this "structure." For example, independent claim 1 of the '723 Patent recites, *inter alia*: "a communication link structured to dispose said at least one media terminal and said at least one media node in a communicative relation with one another via said at least one interactive computer network;" "said communication link *being initiated by said at least one media terminal*" and "said communication link is structured to bypass

at least one media terminal security measure." (emphasis added). Independent claims 1, 17 and 23 of the '195 Patent include similar limitations. These limitations describe the relationship between the "communication link," the "media terminal" and the "media node" that enables the Bypass Function, as described and supported by the specification of the Asserted Patents.

The Bypass Function is the focus of the claimed advance over the prior art in this case. This is clearly a technological solution a problem and an improvement in computer functionality by facilitating the transfer or transmission of digital media files between two or more media devices.

Further, an idea is abstract if it has "no particular concrete or tangible form." *Ultramercial, Inc. v. Hulu*, 772 F.3d 709, 715; see also *In re TLI Commc'ns.*, 2015 WL 627858, at *8 (An idea is abstract if it "describes a scheme or concept not tied to a particular concrete application"). Although the "precise contours of the 'abstract ideas' category" were not delimited in *Alice*, the Supreme Court and the Federal Circuit have provided some important principles. Namely, the Supreme Court has instructed that mathematical algorithms and fundamental economic and conventional business practices are abstract ideas. See *DDR Holdings, LLC v. Hotels.com LP*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (citing *Benson*, 409 U.S. at 64, 93 S.Ct. 253 (finding mathematical algorithms patent ineligible); *Bilski*, 561 U.S. at 611 (finding the "fundamental economic practice" of hedging to be patent ineligible); *Alice*, 134 S.Ct. at 2356 (same for intermediated settlement)).

In addition, claims that "simply instruct the practitioner to implement the abstract idea of intermediated settlement on a generic computer" are also abstract. *DDR Holdings*, 773 F.3d at 1256 (citing *Alice*, 134 S.Ct. at 2359); *see also Ultramercial*, 772 F.3d at 715-16 (finding claims using advertising as a currency as applied to the particular technological environment of the

Internet merely recited an abstract idea); *BuySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (finding claims patent ineligible that did nothing more than implement the abstract idea of creating a "transaction performance guaranty" over a network); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344-45 (Fed. Cir. 2013) (finding claims patent ineligible that merely recited "generalized software components arranged to implement an abstract concept on a computer"); *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) (finding claims patent ineligible that recited the use of a computer to implement the abstract idea of managing a stable-value protected life insurance policy) (collectively "DDR Holdings Cases").

At issue in the DDR Holdings cases, is that the asserted claims "were recited too broadly and generically to be considered sufficiently specific and meaningful applications of their underlying abstract ideas … [and] in substance were directed to nothing more than the performance of an abstract business practice on the Internet or using a conventional computer." *DDR Holdings*, 773 F.3d at 1256. These types of claims are not patent-eligible. *Id*.

Here, the Patent Claims do not fall within the contours of the DDR holdings cases. They have physical, tangible and specialized components that are directed to more than performance of an abstract idea. The Patent Claims have a clear, concrete and tangible form in that they are directed to providing a media system that allows for the transfer or transmission of digital media files between two or more media devices using a communication link that is "structured to bypass at least one media terminal security measure," with tangible and concrete hardware that has been adapted for that purpose.

      B.    *Alice* Step Two – The Patent Claims Include an Inventive Concept

As discussed above, the Patent Claims are not directed to an abstract idea. Further, even assuming, *arguendo*, that the Patent Claims are directed to an abstract idea, the Patent Claims nonetheless include an inventive concept.

Almost all inventions consist of new combinations of old elements. *See DDR*, 773 F.3d at 1257 n.5 ("[o]n a fundamental level, the creation of new compositions and products based on combining elements from different sources has long been a basis for patentable inventions"). Thus, a claim element is not conventional for purposes of a Section 101 analysis just because it appears in the prior art.

As the Amended Complaint states, "the claims of the Display Tech Patents require a communication link that is structured to bypass one or more security measures, such as a password and/or firewall, employed by the interactive computer network, the corresponding networking devices, and/or the particular media devices themselves. This facilitates the transfer or transmission of digital media files between two or more media devices, *and is an unconventional technological improvement over the prior art*." *See* Dkt. No. 18 at pages 4-5, ¶ 14 (emphasis added). This is accomplished by a specific claimed architecture in which relationships between physical elements are defined that enable the Bypass Function. These elements and architecture that enable the Bypass Function are found in the Asserted Claims and described in the written specification.

### III. CLAIM CONSTRUCTION

Plaintiff asserts that at least the following term requires construction prior to the Court ruling on Defendant's Motion: "a communication link . . . structured to bypass at least one media terminal security measure."

For example, Defendant argues that the claims are directed to the abstract idea of "transferring a digital media file." *See* Defendant's Motion at 17. However, the communication

link used for transferring the digital media file must be properly structured such that the transference can occur regardless of regardless of whether the media node has independent access to the interactive computer network. This proper structure includes the ability to bypass at least one security measure.

A proper construction of the phrase "a communication link . . . structured to bypass at least one media terminal security measure" is *directly relevant* to the issue of whether the "patent simply applies an abstract idea in a routine and conventional way." *See* Defendant's Motion at 25. A proper construction of this phrase is also required to properly evaluate Defendant's "abstract concept" arguments. Indeed, because Defendant's motion is presented to the Court at the pleading stage, the Court is left with *zero developed record* from which it could possibly assess what was, and what was not, well-understood, routine, and conventional in the art as of December 2007, not to mention a lack of familiarity with the disclosures and the prosecution histories of the Asserted Patents.

Further, this Court has previously denied a Rule 12(b)(6) motion to dismiss prior to claim construction, even when the defendant offered to adopt plaintiff's proposed claim constructions. *See GreatGigz Solutions, LLC v. East Texas Border Health Clinic d/b/a Genesis Primecare,* Case No 2:21-cv-00370-JRG*,* Dkt. No. 29 (June 28, 2022 E.D. Tex.) ("the briefing demonstrates that much of the record is left undeveloped, and it is clear that numerous disagreements between the parties concerning the *Alice* analysis impinge on the construction of the disputed terms" . . . "further inquiry into issues such as the knowledge of one of ordinary skill in the art as to the disputed terms may be resolved at claim construction" . . . "the Court is not inclined to hypothetically adopt either party's purported claim constructions to push the case to an earlier resolution while such disputes remain").

Accordingly, Plaintiff's Motion is premature and should not be taken up until after claim construction has occurred in this case and the factual record as to the state of the prior art developed.

### IV. CONCLUSION

Plaintiff has plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Defendant's Motion cannot overcome the factual assertions in the Amended Complaint and the factual assertions derived directly from the written specification of the Asserted Patents. Further, claim construction is required in order to properly evaluate Defendant's "abstract concept" and "no inventive concept" arguments.

/ / / / /

Dated: April 17, 2024                                           Respectfully Submitted,

*/s/ Randall T. Garteiser*
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com
M. Scott Fuller
   Texas Bar No. 24036607
   rgarteiser@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served on April 17, 2024 with a copy of this document via the Court's CM/ECF system.

/s/ *Randall T. Garteiser*
Randall T. Garteiser