**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| DISPLAY TECHNOLOGIES, LLC | ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | C.A. No. 2:23-cv-00591 |
| SIRIUS XM RADIO INC., | ) ) | **JURY TRIAL DEMANDED** |
| *Defendant*. | ) ) ) | |

**SIRIUS XM RADIO INC.'s REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS AS THE ASSERTED PATENTS
<u>CLAIM UNPATENTABLE SUBJECT MATTER UNDER 35 U.S.C. § 101</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION .......................................................................................................... 1

II.    DT'S OPPOSITION CANNOT SHOW THAT THE ASSERTED CLAIMS ARE PATENT ELIGIBLE UNDER 35 U.S.C. § 101.................................................................. 2

    A.    *Alice* Step One –The Claims Are Invalid As Directed To Abstract Ideas .............. 3

    B.    *Alice* Step Two – The Claims Do Not Have Any Inventive Concept Whether Read Individually Or As An Ordered Combination ............................... 7

III.    THE COURT MAY QUICKLY REJECT DT'S CONTENTIONS THAT THIS CASE CANNOT BE DISMISSED AT THE PLEADING STAGE ................................. 8

IV.    CONCLUSION............................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alice v. CLS Bank*,
   573 U.S. 208 (2014) ..................................................................................................3, 6, 7

*Bascom Glob. Internet Servs. v. AT&T Mobility*,
   827 F.3d 1341 (Fed. Cir. 2016) ...............................................................................................8

*Bluebonnet Internet Media Servs., v. Pandora Media*,
   2024 WL 1338940 (Fed. Cir. Mar. 29, 2024) ..................................................................3, 10

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ...........................................................................................5, 6

*Display Techs. v. ZTE (USA)*,
   Civ. No. 2:17-00068-JRG-RSP, Dkt. No. 26 .........................................................................9

*Free Stream Media v. Alphonso*,
   996 F.3d 1355 (Fed. Cir. 2021). Dkt. 20 ............................................................................4, 5

*GreatGigz Solutions, LLC v. East Texas Border Health Clinic*
   No. 2:21-CV-00370-JRG, 2022 WL 2328787 (E.D. Tex. June 28, 2022) ...............................9

*NexusCard, Inc. v. Kroger Co.*,
   Case No. 2:15-cv-968-JRG-RSP, 173 F. Supp. 3d 462 (E.D. Tex. 2016), *aff'd*,
   688 F. App'x 916 (Fed. Cir. 2017) ..................................................................................8, 10

*Rich v. Columbia Med. Ctr. of Plano Subsidiary, L.P.*,
   2020 WL 954737 (E.D. Tex. Feb. 27, 2020) .........................................................................2

*In re TLI Commc'ns LLC Pat. Litig.*,
   87 F. Supp. 3d 773 (E.D. Va. 2015), *aff'd*, 823 F.3d 607 (Fed. Cir. 2016) ..........................4, 8

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) .................................................................................................4

**Statutes**

35 U.S.C. § 101 ................................................................................................................2, 9, 10

**Other Authorities**

IPR2022-00230, Paper 1 ..........................................................................................................9

**I.      INTRODUCTION**

Display Technologies' ("DT") opposition confirms that the Patents-in-Suit are patent ineligible as it presents through its Amended Complaint nothing more than conclusory contentions that its patent claims are not an abstract idea and have an inventive concept.  The Federal Circuit has consistently found that such allegations cannot save patents from an ineligibility finding at the pleading stage.

Despite this, DT tries to make the case that the claims do not comprise an abstract idea, but DT fails to grapple with the fundamental argument Sirius XM Radio ("SXM") presented in its motion—*i.e.*, that neither the patent claims nor the specifications outline ***how*** to perform the recited function in the claims of structuring the communication link to "bypass a media terminal security measure."  That is, and remains, an abstract idea.

DT's opposition likewise fails to identify any inventive concept in the claims by relying on conclusory allegations in its Amended Complaint.  Notably, DT fails to rebut SXM's contention that the claims use generic computer and networking technologies that behave exactly as expected according to their ordinary use rather than describing any new technological improvement, new computer, or new method of use.  Indeed, DT ignores the explicit disclosures in the patents confirming as much.

Finally, DT's argument that the Court must construe claims before evaluating patent eligibility rings hollow.  DT presents a construction but cannot explain how that construction, even if accepted as SXM has for this motion, demonstrates the eligibility of the claims.  Worse, DT's argument contradicts its previous positions before this Court regarding at least one of companion patents at issue here where it represented that no explicit claim construction was needed.

For at least these reasons explained more fully below, SXM respectfully requests that the Court find the claims patent ineligible and dismiss DT's Amended Complaint with prejudice.

## II. DT'S OPPOSITION CANNOT SHOW THAT THE ASSERTED CLAIMS ARE PATENT ELIGIBLE UNDER 35 U.S.C. § 101

DT's opposition tries to create factual disputes through its Amended Complaint, but even a cursory review demonstrates that the allegations about the nature of the purported inventions is nothing more than conclusory *ipse dixit* that the Court can, and should, ignore. Opp. at 4; Dkt. 18; *see also* Dkt. 20, Ex. C. Repeatedly stating without support that the claims are not drawn to abstract ideas and contain an inventive concept does not make it so.[1]

In particular, DT argues that the claims "require a communication link that is structured to bypass one or more security measures" to "facilitate[] the transfer or transmission of digital media files between two or more media devices." Opp. at 4. However, DT fails to explain, in its Amended Complaint, in its opposition, or in its own patents, specifically ***how*** that communication link should be structured to perform that function. DT nevertheless argues that the link "is an unconventional technological improvement over the prior art." *Id.* And yet missing from DT's Amended Complaint, opposition, or its own patents, is any specific and plausible allegation as to how that was an "unconventional technological improvement." DT just says that it is with nothing more.

DT's allegations in the other paragraphs of its amended pleading fare no better. Opp. at 5. The claims, DT argues, "are not drawn to laws of nature, natural phenomena, or abstract ideas." *Id.* (citing Dkt. 18, ¶ 15). However, reciting this general proposition of law to say that the Patents-in-Suit satisfy the statutory requirement under § 101 is insufficient as a matter of law. Likewise, DT's allegations that "the claims of the Display Tech Patents contain inventive concepts" and that the "specific combination of elements, as recited in the claims, was not conventional or routine at

---

[1] Because DT failed to respond to SXM's statement of facts and background (Dkt. 20, 4–13), the Court should "presume[] that Plaintiff does not controvert the facts set out by Defendant and has no evidence to offer in opposition to the argument." *Rich v. Columbia Med. Ctr. of Plano Subsidiary, L.P.*, 2020 WL 954737, at *5 (E.D. Tex. Feb. 27, 2020). Accordingly, there is no factual dispute that would prevent the Court from ruling on SXM's motion now.

the time of the invention" because, in DT's words, "the Patent Claims capture unconventional technological improvements over the prior art," are pure legal conclusions masquerading as factual allegations. Opp. at 5 (citing Dkt. 18, ¶¶ 15–16). All these allegations may be quickly rejected because, as the Federal Circuit recently explained, this Court is "not required to accept as true" these purely conclusory statements that "state legal conclusions." *See Bluebonnet Internet Media Servs., v. Pandora Media*, 2024 WL 1338940, at *2 (Fed. Cir. Mar. 29, 2024).

In addition to this fatal flaw, DT's remaining arguments are circular. According to DT, the claimed inventions provide purported benefits which "are conferred due to the inventive concepts as claimed" yet, at the same time, DT says the inventive concepts were inventive because the inventive concepts are "claimed." Opp. at 6. This is nothing more than circular reasoning that should be quickly rejected.

SXM addresses below each of DT's particularized arguments under the two parts of the *Alice* test.

### A.   *Alice* Step One –The Claims Are Invalid As Directed To Abstract Ideas

As SXM explained in its moving papers, the claims are directed to an abstract idea. Dkt. 20, 16–21. DT's primary argument that the claims are not drawn to an abstract idea provides another example of its circular reasoning—the "communication link" must be "structured to bypass at least one terminal security measure" as described because the specifications repeat the exact same language. Opp. at 7 (quoting '723 Patent, 5:26–44) ("communication link" can "bypass the firewall or other media terminal security measure"). DT then argues that "the specification describes the relationship between the physical elements that enable the Bypass Function." *Id.* But there are two critical problems with DT's argument.

*First*, the "communication link" is not a physical link, so the arrangement of the "physical elements that enable the Bypass Function" is irrelevant. Opp. at 7. There is also ***no*** description in

the Patents-in-Suit, the Amended Complaint, or DT's opposition of ***how*** to structure the "communication link" to perform this purported "Bypass Function." DT merely argues that the particular physical arrangement of the generic computers and devices performs the function in whatever that undisclosed arrangement happens to be. This alone makes it abstract.

*Second*, if the "claimed advance" is the "Bypass Function" as DT seems to assert, it is purely a description of "a scheme or concept not tied to a particular concrete application." *In re TLI Commc'ns LLC Pat. Litig.*, 87 F. Supp. 3d 773, 785 (E.D. Va. 2015), *aff'd*, 823 F.3d 607 (Fed. Cir. 2016). Indeed, the "Bypass Function" by its very language is purely functional and is not tied to any application on how it should be performed and thus, has "no particular concrete or tangible form," rendering it abstract. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). If it was concrete, DT would point to something, but DT fails to do so because it does not exist.

Notably, DT concedes that "claims that 'simply instruct the practitioner to implement the abstract idea … on a generic computer' are also abstract." Opp. at 8. That is precisely the case here. SXM analogized the claims at issue here to the claims at issue in *Free Stream Media v. Alphonso*, 996 F.3d 1355 (Fed. Cir. 2021). Dkt. 20 at 18. DT's opposition does not distinguish *Free Stream*; in fact, DT entirely ignores the case. Like the claims in *Free Stream*, however, these claims are also directed to patent ineligible abstract ideas. 996 F.3d 1355, 1358–66 (Fed. Cir. 2021); Dkt. 20 at 18–19.

In particular, the Federal Circuit in *Free Stream* found that claims drawn to technology that allows devices on the same network to communicate through a mechanism of "piercing or otherwise overcoming a mobile device's security sandbox" were abstract. *Free Stream*, 996 F.3d at 1362–63 (claims that "achieve the ***bypassing of the sandboxed application***" are abstract) (emphasis added). As SXM argued in its opening brief, the claims here are just like the abstract

4

claims in *Free Stream*—the "asserted claims provide for how that [result] is achieved only by stating that the mechanism used to achieve this communication is by piercing or otherwise overcoming a mobile device's security sandbox.  But the asserted claims do not at all describe how that result is achieved." *Free Stream*, 996 F.3d at 1363–64.  So too here.  The claims provide a "communication link" that is structured to bypass security measures but "do not at all describe how that result is achieved." *Id.*  DT does not dispute this or provide evidence to the contrary.

After ignoring the most on point Federal Circuit case, DT argues that its claims fall outside the contours of *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) and its progeny because they "have physical, tangible and specialized components that are directed to more than performance of an abstract idea." Opp. 8–9.  DT's argument is meritless.

To begin, the "physical" and "tangible" components of the claims are nothing more than generic computer and networking technologies. *See* Dkt. 20 at 4–13, 21–26.  DT does not dispute this and the specifications of the Patents-in-Suit confirm as much. *See generally* Opp.; *see also* Dkt. 20, 4–13.  For example, the specifications are explicit that generic computer components are used: "any device… may be utilized, including… a desktop computer, laptop or notebook computer, PDA, video game console, mobile telephone, media system of a vehicle" ('723 Patent, 2:40–48), "the interactive computer network 40 may include a Local Area Network ('LAN'), Wide Area Network ('WAN'), Private Area Network ('PAN'), peer-to-peer network, near field communication ('NFC'), Bluetooth network" (*Id.*, 2:65–3:2), "at least one interactive computer network 40'… includes access to the World Wide Web, for example via the Internet" (*Id.* 3:7–10), "the various networking device(s) 42 may include one or more networking device security measures 41 including a firewall, and/or passwords/keys" (*Id.* 3:30–32), "digital media file(s) 60

5

may include virtually any electronic file or data… or any other electronic document or object." *Id.* 3:47–50. The specifications say nothing about these components being specialized in any way.

Even if the Court entertained DT's incorrect argument (and it should not), DT still does not explain ***how*** the "physical, tangible and specialized components … are directed to more than performance of an abstract idea." Opp. 9. On the contrary, DT's opposition confirms that the claims "focus" on a "transfer or transmission of digital media files between two or more media devices." Opp. 9; *see also id.* at 8 ("Bypass Function" "is the focus" and "facilitate[es] the transfer or transmission of digital media files between two or more devices"). Unlike in *DDR*, however, the claims here do not set forth a "***solution*** … necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings*, 773 F.3d at 1257 (emphasis added). DT presents no argument that falls outside the scope of *DDR Holdings* other than conclusory statements that it does.[2]

In addition, the *DDR* cases confirm SXM's fundamental point. As the Federal Circuit has explained, "after *Alice*, there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible. The bare fact that a computer exists in the physical rather than purely conceptual realm 'is beside the point.'" *DDR Holdings*, 773 F.3d at 1256. That is the case here—it is "beside the point" that "tangible and concrete hardware … has been adapted" for the purpose of transferring files because the claims remain "focus[ed]" on transferring digital files using a "communication link" structured to bypass security measures. Opp. at 8–9. The structure of the "communication link" is never explained, described, or outlined

---

[2] DT also appears to argue that because tangible objects are recited in the claims, the claims cannot be directed to an abstract idea. Opp. 8–9. That is incorrect. *See, e.g.*, *DDR Holdings*, 773 F.3d at 1256–57 (identifying cases where patent claims used computers and other physical hardware and still claimed an abstract idea).

in any form and, at best for DT, is performed on generic computers. *Id.* DT does not even cite anything from the specifications of the Patents-in-Suit to support its contention that the claims use "hardware that has been adapted for that purpose." Opp. 9. Thus, DT's argument fails.

### B. *Alice* **Step Two – The Claims Do Not Have Any Inventive Concept Whether Read Individually Or As An Ordered Combination**

DT's inability to point to something—anything—that is not generic, ubiquitous, or conventional in the hardware and software components of the purported inventions is striking. Opp. at 9–10. DT only asserts in conclusory form that the claims contain an unconventional inventive concept because, in DT's words, "a specific claimed architecture in which relationships between physical elements are defined that enable the Bypass Function," and "[t]hese elements and architecture that enable the Bypass Function are found in the Asserted Claims and described in the written specification." Opp. 10. After making this generalized statement that the inventive concept is found in the claims and specification, DT does not point to anything in support, either a particular arrangement of claim terms or something in the specification. In effect, DT sends the Court on a journey to locate the inventive concept without a compass, map, or, for that matter, an end point. Indeed, DT's opposition does not even attempt to describe how the particular arrangement of claim elements, either as a whole or as an ordered combination, confers an "inventive concept." *Alice v. CLS Bank*, 573 U.S. 208, 217–18 (2014). This telling omission confirms the Patents-in-Suit have no inventive concept.

DT also, in the mere three paragraphs it devotes to defending the purported inventive concept, fails to rebut SXM's argument that *each and every component* of the "architecture" is a generic computer or network technology that behaves exactly as expected according to its common, everyday use. Dkt. 20 at 21–26; *id.* at 10–13. Indeed, the specifications and claims of the Patents-in-Suit fail to disclose or describe "how its *particular arrangement of elements* is a

7

technical improvement over prior art ways" of conducting a digital file transfer. *Bascom Glob. Internet Servs. v. AT&T Mobility*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (emphasis added).  Even DT's opposition does not describe how the "architecture" enables the "Bypass Function," other than simply stating in conclusory fashion that it does. Opp. 10.

It cannot be disputed that the claims "do nothing more than spell out what it means to apply [the abstract idea] on a computer," where, as here, the "recited components behave exactly as expected according to their ordinary use." *TLI Commc'ns*, 823 F.3d at 615.  Thus, there is no "inventive concept" here that can confer patent eligibility to the claims.

### III. THE COURT MAY QUICKLY REJECT DT'S CONTENTIONS THAT THIS CASE CANNOT BE DISMISSED AT THE PLEADING STAGE

DT raises a number of arguments as to why this case should not be dismissed at the pleading stage.  None have merit as explained below.

*First*, DT argues that the Court has "zero developed record from which it could possibly assess what was, and what was not, well-understood, routine and conventional in the art as of December 7, 2007." Opp. at 1.  But DT fails to identify what would need to be developed in order to rule on patent ineligibility.  Indeed, this Court has dismissed cases for patent ineligibility under strikingly similar circumstances. *See NexusCard, Inc. v. Kroger Co.*, Case No. 2:15-cv-968-JRG-RSP, 173 F. Supp. 3d 462, 463 (E.D. Tex. 2016), *aff'd*, 688 F. App'x 916 (Fed. Cir. 2017).  In *NexusCard*, this Court granted a motion to dismiss where the patent at issue "describe[d] a problem, announce[d] purely functional steps that purport to solve the problem, and recite[d] standard computer operations to perform some of those steps." *Id.* at 467.  So too here.  DT's patents describe a problem—"individuals… may desire to share the digital media files… or play the files on a computer or other media device… with a larger or better quality screen." Opp. 4. DT's patents then announce a purely functional solution—the "communication link" is "structured

8

to bypass at least one media terminal security measure." *Id.* at 7. And to perform that function, DT's patents simply recite generic computer components and operations—a point undisputed by DT. *See, e.g.*, '732 Patent, Claim 1; *see also* Dkt. 20 at 4–13 (SXM's unrebutted statement of facts). This District routinely grants Rule 12 motions based on § 101 under such circumstances. *See* SXM's Op. Br. 15–16 (outlining cases that DT does not dispute). SXM asks the Court to do the same here.

*Second*, DT argues that the Court must engage in claim construction, but that argument is particularly unavailing. For the '723 Patent, DT has previously argued to this Court that claim construction is unnecessary. *Display Techs. v. ZTE (USA)*, Civ. No. 2:17-00068-JRG-RSP, Dkt. No. 26 (stating that "there are no terms that require construction"). And in IPR2022-00230, which involved the '723 Patent, DT did not dispute that no claim construction was required. IPR2022-00230, Paper 1 at 23. Now, DT does not explain why it needs claim construction, why it took its previous position before this Court in *ZTE*, or why the '195 Patent (which also contains the same "communication link… structured to bypass" term), requires construction. In fact, no claim term requires construction (and in any event SXM has adopted DT's proposed construction for purposes of the instant motion).

DT's reliance on *GreatGigz Solutions, LLC v. East Texas Border Health Clinic* does not support its argument. *See* No. 2:21-CV-00370-JRG, 2022 WL 2328787, at *2 (E.D. Tex. June 28, 2022). In that case, the movant adopted plaintiff's proposed construction but "then proceed[ed] to analyze and construe disputed terms." *Id.* By contrast, here, SXM has adopted DT's proposed construction for purposes of the instant motion without creating any issue regarding other terms. Indeed, there are no "disputed terms," and DT does not identify any, despite having two opportunities to do so. *See* Dkt. 15, 25. As SXM explained in its moving papers, whether the Court

9

examines the patent claims now or adopts DT's construction, the claims remain patent ineligible and DT does nothing to dispute this point.

*Third*, DT argues that SXM has not overcome purported "procedural obstacles," such as the "concrete allegations" in the Amended Complaint. Opp. 2–3. In support, DT cites cases from other federal courts that have denied Rule 12 motions based on § 101 at the pleading stage. *Id*. at 3. As a threshold matter, **none** of DT's cited authorities are binding on this Court and **none** are even from this District. DT conveniently ignores the numerous cases from this District granting 12(b)(6) and Rule 12(c) motions based on § 101 at the pleading stage. *See* Dkt. 20 at 15–16 (collecting cases); *see also NexusCard, Inc. v. Kroger Co.*, Case No. 2:15-cv-968-JRG-RSP, 173 F. Supp. 3d 462, 463 (E.D. Tex. 2016), *aff'd*, 688 F. App'x 916 (Fed. Cir. 2017).[3]

Accordingly, the Court can, and should, dismiss this case at the pleading stage.

## IV. CONCLUSION

For at least these reasons and the reasons set forth in SXM's opening brief, SXM respectfully requests that this Court dismiss DT's Amended Complaint with prejudice and find the claims invalid under 35 U.S.C. § 101.

---

[3] And as discussed in more detail above, the "concrete allegations" DT alleges are purely conclusory allegations that this Court may disregard. *See Bluebonnet Internet Media Servs., v. Pandora Media*, 2024 WL 1338940, at *2 (Fed. Cir. Mar. 29, 2024) ("[T]he district court was not required to accept as true allegations in the complaint that are conclusory, state legal conclusions…").

Dated: April 24, 2024                                       Respectfully submitted,


By: */s/ Mark A. Baghdassarian*
Mark A. Baghdassarian
Shannon Hedvat
Jeffrey Coleman
mbaghdassarian@kramerlevin.com
shedvat@kramerlevin.com
jcoleman@kramerlevin.com
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Tel: (212) 715-9100
Fax: (212) 715-8000

Melissa R. Smith
Texas Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com


*Counsel for Defendant Sirius XM Radio Inc.*

## CERTIFICATE OF SERVICE

I certify on April 24, 2024, the foregoing document was filed electronically with the Court, with notice of filing generated and sent electronically via the Court's CM/ECF system to all counsel of record.

By: */s/ Melissa R. Smith*
Melissa R. Smith